Case of the Day, which is Seismic Wells v. Sinclair Oil and Gas, Clause No. 17-10500. Good morning. My name is Benjamin Walther. I represent Sinclair Oil and Gas Company in this case. Today we are here appealing the trial court's denial of Sinclair's Rule 54 motion for attorney's fees. The trial court denied that motion for three reasons, and unless the court has any questions about the pleading issue that's addressed in the party's briefing, I think the case law is sufficiently clear on that point that I'm going to focus on the two most contested issues. So the first issue is whether Seismic Wells asserted a claim against Sinclair Oil and Gas Company under the joint operating agreement to enforce a financial obligation, and the second issue is whether the district court was permitted to outright deny Sinclair's recoverable attorney's fees based on its conclusion that it did not agree with Sinclair's method of segregation. As for the first issue, the joint operating agreement's prevailing party provision, according to that plain language, states that a party who prevails on a claim can recover its attorney's fees as long as that claim meets two requirements. First is that it has to be a claim asserted in a legal proceeding, and the second requirement is that the claim has to be to enforce a case, this court recently addressed that exact provision that is at issue in this case. In that case, the bankruptcy court and then subsequently the district court equated the term financial obligation with a lawsuit to assert monetary damages as opposed to injunctive relief. This court affirmed that decision recently in January 2018. In that opinion, this court explained that the four lawsuits that were subject to the prevailing party provision in that case did not meet the financial obligation requirement for two reasons. The first reason was that several of the cases requested injunctive relief. They did not ask for any monetary damages. The second reason was that some of the claims tried to settle their own financial obligations rather than enforce another party's financial obligations. In our case, this is very similar. Seismic Wells sued Sinclair III, alleging that it breached the joint operating agreement whenever it decided to plug a well without Seismic Wells' consent. And then Seismic Wells said that that decision cost Seismic Wells $600,000 in monetary damages. And as a result, Seismic Wells squarely put its breach of the JOA claim within the ambit of the prevailing party provision because it asserted a legal proceeding against Sinclair III, and it alleged that it had experienced $600,000 in damages as a result of this alleged breach of the JOA. Now, Seismic Wells' response to this is that it's argued that it actually did not sue Sinclair for a breach of the JOA. It instead claims that it sued Sinclair for a breach of section 9.5 of the replacement participation agreement, a contract that coincidentally does not have a prevailing party provision in it. But that is simply not true. If Your Honors would turn to tab 1 of the notebook that we provided, you'll see a portion of Seismic Wells' first admitted complaint. It's a live pleading in this case. In the highlighted language on the first page, you'll see that Seismic Wells expressly stated that Sinclair had allegedly breached the party's operating agreement. It does not say that Sinclair breached the replacement participation agreement. And that's for good reason. And the reason is because the replacement participation agreement has no applicability to this claim. If you'll take a look at tab 2, you'll actually see the provision from the joint operating agreement that Seismic Wells actually sued Sinclair for, and you'll see the language from the replacement agreement that now, on appeal, it's claiming it was asserting for. And so in tab 2 at the top is the joint operating agreement. And what that provision states is that if a party wants to plug a well, it has to get the consent of the other parties. And if a party does not consent, then the party wanting to plug the well has to either assign the well to the other party, or it has to operate that well on the other party's behalf subject to certain pre-specified rates. That's exactly what Seismic Wells claims Sinclair 3 did not do in this case. You'll see that in the replacement participation agreement. And in that provision, all it says is that if a party transfers operations to another party, then the transferring party has to provide a two-page long form called a change of operator form from the Texas Railroad Commission. Seismic Wells is not claiming that it experienced $600,000 in damages because Sinclair did not give it a form. It's claiming that it experienced $600,000 in damages because it plugged a well without Seismic Wells' consent. So Seismic Wells clearly asserted a claim to enforce financial, I'm sorry, and then the second issue is that Seismic Wells alleged that it did not actually sue for monetary damages, that it only asked for injunctive relief. But again, that is also not true. And in tab 1 on this second page, it's the very next page of Seismic Wells' first submitted complaint, Seismic Wells expressly said that it was suing for $600,000 in damages. And it didn't only plead that in its pleading, at trial and then again on appeal to a different panel for this court, Seismic Wells claimed that it had proven a, quote, amount certain in actual damages. And it linked that amount certain to the joint interest billing statements that Sinclair had sent to Seismic Wells pursuant to the joint operating agreement. So what you have is you have a claim that Seismic Wells asserted against Sinclair III, alleging that it had breached the joint operating agreement and caused monetary damages. That's exactly what the prevailing party provision in the JOA was meant to cover. Is this what you said in your opening brief? Because I thought in your opening brief, you said that Seismic asked the jury to require Sinclair to pay back $399,000 in administrative fees and then $1,278,000 in lease operating interest. And you said that Seismic asked the jury to cover it by paying expenses collected under the JOA. Was that your claim? Yes, Your Honor, there were actually two issues, kind of at the district court. So the district court, there was a claim for a breach of the joint operating agreement. And then we also had argued that some claims were inextricably intertwined or the legal services were inextricably intertwined. And those were based on the fraud claims that Seismic Wells failed on at trial as well. But you got to show that they sued for a financial obligation that was covered by the JOA. Yes, Your Honor. And so in our Rule 54 motion, we had argued that Seismic Wells had alleged this breach of the joint operating agreement. And according to that breach, it had requested $600,000 in damages. Then it had also sued for fraud. And in the fraud claims, it had alleged that it had experienced other damages, including the $399,000 for administrative fees. And then I believe it was like $1.5 million or $1.2 million for lease operating expenses that were collected personally to the JOA. So I think because it had sued Sinclair for this. So on the breach of contract claims, your contention is they're related to the JOA. Yes, Your Honor. All right. But what you're telling me, though, is that the claims need to be financial obligations covered by the JOA, which is different from related to the JOA. Do you agree with me? Yes, sir. So I believe that there's we provided legal services that related to breach of contract claims for some other breaches or alleged breaches for the contract called the initial participation agreement and the replacement participation agreement. Then there was also another claim that alleged that we had breached specifically the joint operating agreement by plugging this well without Seismic Wells consent. Some of the legal services for those two claims were inextricably intertwined. So, for example, Seismic Wells claimed that the damages for this breach of the JOA claim was some of the administrative fees you would get for operating a well. It made that same allegation for its fraud claims. And so, therefore, the legal services we brought upon it. But in connection with the administrative fees, when you make that claim in your opening brief, you tie that back. If you look at the testimony from the economic damages expert, Sidney Thompson, isn't that right? Yes, Your Honor. That's what you tie it back to. Well, his testimony, he says he calculated those damages based on the replacement agreement. Isn't that what he said? Yes, Your Honor. And I think that's part of it. Part of what it claims is that Sinclair breached the replacement agreement by allegedly plugging this well without Seismic Wells consent. And then it points to the replacement agreement. But the replacement agreement doesn't have any terms in it that say, you can't plug a well without anyone's consent. That's a term that's in the joint operating agreement. So it's suing us for an action saying it's part of a different contract that doesn't have a prevailing party provision. But in reality, the claim is based on the joint operating agreement. And that's what Seismic Wells said. Well, who was Sidney Thompson testifying for? He's testifying for the plaintiffs, for Seismic Wells. All right. So what we have is we have a situation where they're saying on one hand, this is a claim based on the replacement agreement. But in reality, it's a claim about the joint operating agreement premised on a specific provision in the joint operating agreement. Except when you made the claim that you were talking about financial obligations under the JOA, then you referenced his testimony. Yes, Your Honor. And his reference when he says that is to the replacement agreement, not the JOA. Yes. Whoever he was testifying for, your claim was that that testimony was the basis for your contention that this is a financial obligation covered under the JOA, right? You cited his testimony for that. Correct. And he said I calculated those damages based on the replacement agreement, not the JOA. Right. And he was incorrectly referring to the replacement agreement. The replacement agreement doesn't have anything about administrative fees in it. The replacement agreement is... So when you cited him as support for your argument, did you point out that he was incorrect? I'd have to go look at the briefing again, but the replacement agreement, the problem is the joint operating agreement is an exhibit to the replacement agreement. So oftentimes throughout this lawsuit, the parties have almost interchangeably referred to these things because it's exhibit C to the replacement, or the joint operating agreement is exhibit C to the replacement agreement. So one of the issues here is that I agree that Sinclair should not be entitled to recover its attorney's fees for work it solely did relating to an alleged breach of the replacement agreement. Here we have a claim alleging a specific breach on a financial obligation to the joint operating agreement. And so I am not suggesting that the prevailing party provision of the JOA... So for this one claim you're saying relates to the JOA, explain to me why it was a claim to enforce a financial obligation. So what it had... Like this court established in WBH Energy, is that financial obligation, the word financial would relate to money. Here, Seismic Wells sued us for a monetary damages as opposed to injunctive relief. And what was the obligation? The obligation was to give this well back, or to not plug a well without Seismic Wells' consent. And you're calling that a financial obligation? Well, Seismic Wells called it a financial obligation. Well, no, they said these are the damages we're entitled to because you didn't meet an obligation. Right, so elsewhere in the contract, they used the word obligation. So, for example, in Article 13, it says expenses, liability, or other obligations. And so by saying, using the word other, to give that its plain meaning, that expenses and liabilities would be part of obligations. And so here you have a financial obligation, which is the same as a financial liability. And that's exactly what Seismic Wells argued it had, was it had experienced financial or monetary... or that Sinclair was financially or monetarily liable for this alleged breach. So that... I'll actually just reserve the rest of my time for rebuttal, and at that point I will address the segregation issue that I think is addressed adequately in the briefing as well. Thank you, Your Honor. Morning, Your Honors. May it please the Court. My name is Tim Craddick, and I, along with my co-counsel, Mr. Gary Sorden, represent Seismic Wells, LLC, the appellee in this case. This Court should affirm the District Court's denial of appellant's motion for attorney's fees for the following three reasons. First, Seismic Wells never sued to enforce a financial obligation under the Joint Operating Agreement. Second, appellant failed to segregate its fees as required by the law. And third, appellant failed to actually plead its fees as required by Federal Rule of Civil Procedure 9G. I'll be addressing the first two issues. Mr. Sorden will be addressing the third. What's important to keep in mind while we're addressing these issues is that all three grounds provide an independent basis on which the Court denied appellant's motion. And so in order for appellants to succeed here today, they have to succeed on all three issues. I take it we should also wait to see... There was an appeal argued a few months ago, right, on the underlying merits of the case. It's absolutely correct, Your Honor. So shouldn't we wait to rule to see if there's still a prevailing party? This Court should wait to rule to see if there's still a prevailing party if the case is set... I mean, if you were to get a reversal in that, this is moot, right? It's exactly correct, Your Honor. It's exactly correct. With that in mind, we have time with the Court today, so we'll go ahead and discuss it anyway. Sure. Seismic Wells never sued to enforce a financial obligation under the Joint Operating Agreement. Now, what's important to keep in mind is there's all sorts of different obligations under the Joint Operating Agreement. Not all of those obligations are financial obligations. For example, the obligation to turn over a well when someone non-consents to the plugging of that well is not a financial obligation. That is seeking a transfer of operations, which is exactly what happened in the NRA WBH case that was before this Court, where this Court affirmed the finding that a suit over transfer of operations was not a financial obligation as contemplated under the Joint Operating Agreement. More importantly, what appellant actually asked the District Court for in its motion for attorney's fees is it asked the District Court, it stated pursuant to the JOA's prevailing party provision, Sinclair asks this Court to award its attorney's fees it incurred in defending against Seismic Wells fraud claims. That's on the record at page 2542. In fact, in their original motion to the District Court, they never even mentioned financial obligation. They never even cited the full text of this attorney's provision. And in the evidence that they provided to the Court, on which it asked the Court to fine their attorney's fees, the affidavit actually stated um it only references the operating, well I apologize the affidavit actually stated that as explained in Sinclair's Rule 54 motion for attorney's fees, Sinclair's defense of the fraud based claims relating to the Joint Operating Agreement are inextricably intertwined with its defense of the remaining fraud claims. The entire affidavit that is the basis for their request for attorney's fees talks about defending against fraud claims and defending against other claims that are allegedly inextricably intertwined with fraud claims. They haven't even offered an evidentiary basis on which the District Court could find that there were any fees incurred in defending against a suit on a financial obligation. Of interest is that a review of the billing records that were attached to the application, on my review I was actually only able to find three references to the operating agreement, and that's on page 2970 of the record. And in each of these instances the billing records actually indicate that Appellant was reviewing the operating agreement in order to consider what kind of claims it could sue Seismic Wells for under the Joint Operating Agreement. In fact, it said that it was preparing a complaint under the Joint Operating Agreement. Those are certainly not fees that are in connection with defending against a lawsuit to enforce a financial obligation under the Joint Operating Agreement. This Court was absolutely correct in noting that I guess as an initial matter, they never presented to the District Court any arguments about this $1.278 million, this $399,000 or this $600,000. So that was simply not before the District Court at that time. In any event, as explained in the testimony throughout trial, what Seismic was contending is that the $1.278 in lease operating expenses, it had paid Sinclair. It should get paid back as part of restoring the parties to the position they would be in prior to the replacement participation agreement. All of the damages models in this case are about restoring the parties to the place they would be in prior to the entry of these agreements. This is not a collections case. It's not a case where someone is seeking a monetary amount that they are owed. It's a case where people are seeking the return to the position they were in prior to these things happening. In turning to Sinclair's failure to segregate its fees, I briefly addressed their failure to segregate the fees. Here, in this case, unlike in a number of other cases they've cited, the District Court was actually the fact finder in this case. The fees were not submitted to a jury. Because the District Court was the fact finder, the District Court's factual findings related to the fees are entitled to an abuse of discretion review. I will agree, I will submit that the determination of whether fees should be segregated is a matter of law, but the ultimate finding of the reasonableness of those fees is a question of fact and the District Court, as the fact finder in this case, found that they should be segregated. Our interpretation of the order is that having reviewed the material they presented was insufficient on those grounds. One more point in Navigant, which is the case cited by the proposition that this case should be remanded. In Navigant, the remand was back to the District Court who had decided the fees, but it was actually because there was intervening law. CHAPA had been decided between the time that the District Court originally determined fees and the appeal. In view of that, because CHAPA changed the standard for intertwining fees to require that a discrete legal service has to advance both a recoverable and non-recoverable fee, that's why it was remanded back for further proceedings. That's certainly not the case here. With that, I will turn over the floor to my co-counsel, Mr. Sorden, who will address the pleading standard. Unless there are any outstanding questions. Thank you, Counsel. Good morning, Your Honor. Gary Sorden, on behalf of AppellE. I will address the position that the District Court took regarding whether they need to plead these damages as special damages. Sinclair essentially states that because it filed a timely motion under Rule 54 within 14 days, it's allowed to seek the attorney's fees under the JOA, prevailing party provision. However, that's in conflict with Fifth Circuit case law on this topic. In the United Industries case in 1996, this circuit said that it must ordinarily be pled as a matter of special damages, and also you must file a timely motion. To be clear, there was a timely motion filed within 14 days. Now, the Fifth Circuit also said that it's not just in the pleadings, it can be by consent or by pretrial pleadings. The facts in this case are clear. They are not in Sinclair's pleadings. There's no claim in any way for attorney's fees under the JOA in its pleadings. Have we ever said that the pleading requirement applies to a prevailing party provision like this one? Yes, actually related to the contractual provision, in fact in Rule 54 the circuit hasn't said this. The advisory notes have said that in fact under contractual provisions, that's the type of pleading you need to allege under special damages those fees. Under Rule 54. In industrial industries, it was the same issue. One, it wasn't timely, but also the court noted, this court noted, that while it's not a strict, if you don't plead it, you don't get it, there must be some notice allowed here. In this case, it's not in the pretrial order, nor is it in the pleadings, and yet we're kind of litigating this on appeal, if you will, regarding the factual situations regarding the JOA prevailing party provision. There's also one thing I want to address that came up regarding administrative overhead fees. In terms of a joint operating agreement, there's really only four areas of financial obligation. Number one, if oil and gas is produced, the operator, Sinclair, must pay out that oil and gas monetary amount to the interest owners like Science Bank Wells. Number two, they must pay vendors, right, for the development of the well and the oil and gas. So pumper trucks, et cetera, they must pay that. That's not an issue here either. That's also not an issue. They pay the amount of oil that was produced. Number three, to the extent there's lien enforcement going on, again, that may be a financial obligation. It may not be. It's not an issue here. And number four, the only thing that we can complain of essentially is the fact that they didn't do something that owed us money, which the only reason under the JOA that would be the case is that they did not pay us the percentage of proceeds from the oil and gas development of this well. It's also important that we're talking about the MSU2 well. It's a single well related to the JOA. And again, the obligation, it's not a financial obligation, the obligation under a JOA is if you want to plug the well and a non-operator does not consent, then they can take over that well and take on all the liabilities, all the plugging responsibilities, et cetera, and have the operators in place at that point in time, which is Sinclair, avoid all those expenses. That's an obligation. It's not a financial obligation. In fact, no party in this lawsuit sued and said, for example, Seismic didn't say, Sinclair, you didn't pay me my oil and gas money under our agreement. You owe me money. They have not alleged, nor can they, that we didn't pay our lease operating expenses or the overhead expenses. More importantly, a non-operated working interest owner like Seismic Wells can never charge overhead expenses to an operator. They're not the operator. The operator would incur those expenses and then delegate those out pro rata. Back to the pleading issue, whether it's special damages, again, there was never a claim that, one, we are asserting a financial obligation that they owe us under the JOA. We did assert that they have an obligation to turn over the well because they wanted to plug it, but that's not a you owe us money under the JOA. And again, the Fifth Circuit also, and Ron McGarrett has said, again, you've got to show it in the pleadings or provide some sort of notice. And again, you must file a timely motion. Here, there simply wasn't any notice regarding their allegation that there is a cause of action here related to a financial obligation in this case. And so, based upon the Fifth Circuit precedent, the District Court, I don't believe, erred in claiming they should have put either one us on notice or made a pleading or something some variament in the pre-trial order regarding the request for the attorney's fees because that would also indicate there's actually a cause of action for a financial obligation, which would have led to, I imagine, a pretty fair amount of discovery regarding what the financial obligation really was. Your Honors, with that, I'll reserve, I'll pass it to Sinclair, unless you have any questions at this point in time. Thank you. Thank you. Rebuttal. To address the pleading issue real quick, there was a lot of talk about whether or not Sinclair provided notice to the opposing party. That's not really at issue here. What's at issue here is whether or not Sinclair was required to specially plead its request for attorney's fees under Rule 9G. And the Fifth Circuit has, or courts in the Fifth Circuit have repeatedly stated that a prevailing party provision is fees for cost, it's not fees for damages. The way you draw that distinction is if it's part of the fees are part of an affirmative element of a cause of action. Sinclair could not have pled that it was a prevailing party provision because it hadn't prevailed until after the trial had taken place. That claim for attorney's fees didn't exist until after trial. And that's exactly why prevailing party provisions are considered fees as cost, not fees as damages. And therefore, you don't have to specially plead those. All you have to do is file a motion within 14 days after the judgment. That's exactly what Sinclair did in this case. As for the segregation issue, this is not under Navigant Consulting and under CHAPA. The court stated both the Fifth Circuit and the Texas Supreme Court stated that whenever you have evidence of an unsegregated fees, then that is still some evidence of recoverable fees. And as a result, the district court acting as the fact finder should then determine what amount is not recoverable. In their briefing, Sizemore-Wells referred to three cases that it argued, suggested that a district court could outright reject an attorney's fees award. But those situations was whenever there was improper evidence of the existence, or there was not sufficient evidence of the existence of fees or those fees reasonableness. That's not what we have here. The court did not make a decision that there was not evidence of fees incurred. The court said, it made a legal conclusion that the fees had not been appropriately segregated. Under CHAPA and under Navigant Consulting, that requires a remand to go to the district court for the district court then to make its factual determination about what amount is recoverable and what amount is not recoverable. What's your response? I think he was arguing that you didn't make this financial obligation argument focusing on this particular claim in your district court attorney's fees request. So what's your response to that? We, in our district court request we asked for fees for basically two different reasons. One there were claims that dealt with the JOA that were fraud claims. We argued those were inextricably intertwined with our breach of the JOA claim. For our breach of the JOA, we specifically stated that one  That's in our Rule 54 motion. And that is what we're currently up on appeal on is whether or not that claim under the JOA constitutes a financial obligation. I would say that based on WVH Energy, that financial obligation is the equivalent of suits for monetary damages, not for injunctive relief. I think that's where you have to draw the line there. And this was a suit that requested $600,000 in monetary damages based on this alleged breach of the JOA. And therefore, it was a suit to enforce a financial obligation under the JOA. Unless the court has any questions, I'll see you the rest of my time. Thank you, Counsel. Thank you very much.